## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
RUANE, CUNNIFF & GOLDFARB INC.,

            Plaintiffs,

  -against-

PERCY PAYNE,

            Defendant,

  -and-

DST SYSTEMS, INC., MICHAEL L. FERGUSON, MYRL C. JEFFCOAT, DEBORAH A. SMITH, ROBERT CANFIELD, BONNIE KARTZ, LATRECIA ONUNKWOR, DIANA WEAVER, DAVID OSTERMEYER, EUGENE SCALIA, United States Secretary of Labor, MARK MENDON, and JILL PEHLMAN,

            Nominal Defendants.

Case No.: 19-civ-11297

---------------------------------------------------------------x

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Ruane, Cunniff & Goldfarb Inc. ("RCG"), by and through its undersigned counsel, alleges as follows in support of its Complaint for declaratory and injunctive relief against Percy Payne, Claimant in one of nearly 400 pending arbitrations before the American Arbitration Association ("AAA") (the "Arbitrations") and nominal defendants DST Systems, Inc. ("DST"), Michael L. Ferguson, Myrl C. Jeffcoat, Deborah A. Smith, Robert Canfield, Bonnie Kartz, Latrecia Onunkwor, Diana Weaver, David Ostermeyer, Eugene Scalia, United States Secretary of Labor (the "Secretary"), Mark Mendon, and Jill Pehlman

(collectively, the "Nominal Defendants"), each of whom is a plaintiff in an action before this Court, except for DST which is a defendant in the actions before the Court:

## NATURE OF THE PROCEEDING

1. This is an action seeking a declaratory judgment in connection with the 395 pending Arbitrations, and to enjoin Claimant's attempt to pursue claims against RCG in arbitration until this Court renders the declaratory judgment. In the Arbitrations, claimants, including Mr. Payne, assert claims under the Employee Retirement Income Security Act ("ERISA") against RCG and DST[1] in connection with alleged mismanagement of the DST Systems 401(k) Profit Sharing Plan (the "Plan").

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because Claimant has asserted claims against RCG and the DST Parties that present federal questions. Specifically, in his demand for arbitration (the "Demand"), Claimant has asserted that RCG and the DST Parties breached their fiduciary duties under ERISA Sections 409 and 502, 29 U.S.C. §§ 1109 and 1132.[2]

3. This Court also has subject-matter jurisdiction over this dispute because the Arbitration was brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

4. This Court has personal jurisdiction over Claimant because ERISA provides for nationwide service of process, and because the Demand asserts claims against RCG, whose principal place of business is in this District. *See* ERISA § 502(e)(2), 29 U.S.C § 1132(e)(2).

---

[1] In addition to DST, Claimant has also asserted claims in the Arbitration against the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan and the Compensation Committee of the Board of Directors of DST Systems, Inc. (collectively, the "DST Parties").

[2] A true and correct copy of Claimant's Demand is attached hereto as Exhibit A.

2

5. Venue is proper in this District pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to RCG's claims occurred in this District. Specifically, in four actions currently pending before this Court, the plaintiffs assert claims virtually identical to those asserted in the Arbitration and purport to seek recovery for harm to the same Plan assets as does Claimant in his Demand. Further, a substantial part of the alleged events and omissions on which the Claimant has sued RCG and the DST Parties occurred in this District.

## PARTIES

6. Plaintiff Ruane, Cunniff & Goldfarb Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. RCG served as an investment adviser and fiduciary to the Plan pursuant to 29 U.S.C. § 1002.

7. Upon information and belief, Claimant Percy Payne is a resident of Missouri.

8. Upon information and belief, Nominal Defendant DST Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Kansas City, Missouri. DST is the Plan sponsor and Plan administrator, a designated fiduciary of the Plan, and a fiduciary pursuant to 29 U.S.C. §§ 1002 and 1102.

9. Nominal Defendant Eugene Scalia is the United States Secretary of Labor, who is vested with authority under 29 U.S.C. § 1132(a)(2) and (a)(5) to enforce Title I of ERISA and has commenced an action seeking relief under ERISA against, *inter alia*, RCG, and the DST Parties.

10. Upon information and belief, Nominal Defendants Michael L. Ferguson, Latrecia Onunkwor, Diana Weaver, Mark Mendon, and Jill Pehlman are residents of Missouri.

11. Upon information and belief, Nominal Defendants Myrl C. Jeffcoat and Bonnie Kartz are residents of California.

12. Upon information and belief, Nominal Defendant Deborah A. Smith is a resident of Connecticut.

13. Upon information and belief, Nominal Defendant Robert Canfield is a resident of Kansas.

14. Upon information and belief, Nominal Defendant David Ostermeyer is a resident of Arizona.

## FACTUAL BACKGROUND

**The Plan**

15. Claimant is a former employee of DST who participated in the Plan in connection with his employment. The Plan is a defined contribution plan governed by ERISA, for which DST is the sponsor and administrator.

16. DST designed the Plan to consist of two components: (i) a 401(k) portion, which was participant-directed among various investment options (the "401(k)"), and (ii) a profit sharing account (the "PSA"), which was not participant-directed. From 1974 until 2016, RCG was the sole investment manager selected by DST for the PSA. RCG had no role in connection with the 401(k) portion of the Plan.

17. In the Arbitrations currently pending before the AAA, the approximately 400 claimants who have filed the Arbitrations ("Claimants") seek to assert identical breach of fiduciary claims against RCG and DST for alleged violations of ERISA in connection with the PSA.

4

**The Arbitration Agreement**

18. In connection with his employment at DST, Claimant received an employee handbook that contained an arbitration agreement (the "Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as Exhibit B.

19. DST provided a thirty-day opt out period during which employees could opt out of the arbitration program. (Exhibit B at A-5.) Claimant did not opt out of the Arbitration Agreement.

20. The Arbitration Agreement provides that its terms apply to "all legal claims arising out of or relating to employment . . . ." (*Id.* at A-1, A-4.)

21. The Arbitration Agreement expressly prohibits class arbitration. Specifically, the Arbitration Agreement requires that:

    a. All claims be "asserted, heard and resolved on a single [employee] basis, unless otherwise agreed to by all parties" (*id.* at A-3);

    b. "Claims by multiple [employees] may not be joined together in a single arbitration" (*id.* at A-3); and

    c. Employees "may not assert claims on behalf of multiple [employees] or as a class action or collective action" either in court or under the Arbitration Agreement, and an employee "may not have a claim asserted on his or her behalf by another person as a class representative or otherwise" (*id.* at A-3, A-4).

**Related Actions in Federal Courts**

22. The Arbitrations are, chronologically, the *seventh* set of proceedings brought by counsel for Claimant (counting the approximately 400 Arbitrations as one)—and the tenth set of proceedings altogether—seeking relief for the same purported breaches of fiduciary duty in connection with the Plan.

### A. The *Cooper* Action and Pending Appeal in the Second Circuit

23. On March 14, 2016, Clive V. Cooper, a former DST employee and a participant in the Plan, filed a putative class action complaint in the U.S. District Court for the Southern District of New York (the "Southern District") against the DST Parties and RCG for alleged breaches of fiduciary duty in violation of ERISA. *See Cooper v. Ruane Cunniff & Goldfarb, Inc., et al.*, No. 1:16-cv-01900 (S.D.N.Y.) (*"Cooper"*).

24. Cooper did not opt out of the Arbitration Agreement, and was thereby bound by the Arbitration Agreement, yet he filed a complaint in the Southern District and sought to represent a class that consisted of "[a]ll participants and beneficiaries of the [Plan] from March 14, 2010 through the date of judgment, excluding the Defendants." (*Cooper*, ECF No. 1.)

25. On June 17, 2016, shortly after *Cooper* was filed, Cooper, upon being presented with the Arbitration Agreement by DST's counsel, voluntarily dismissed his claims against the DST Parties.

26. Cooper, however, refused to dismiss his claims against RCG. As a result, on November 7, 2016, RCG filed a motion to compel arbitration of, or, in the alternative, to dismiss, Cooper's claims against RCG. In support of the motion, RCG asserted that Cooper should be estopped from avoiding arbitration with RCG because, *inter alia,* (i) Cooper's claims against RCG arose under the subject matter of the Arbitration Agreement, and (ii) there was a close relationship between Cooper, RCG and DST.

27. Judge Pauley of the Southern District granted RCG's motion to compel arbitration on August 15, 2017 and ordered Cooper, who "understood that he could opt-out of the arbitration program and voluntarily chose not to," to arbitrate his claims against RCG. Specifically, Judge Pauley held that Cooper's claims against RCG "clearly relate[ ] to his

employment . . . by [DST], and fall[ ] squarely within the scope of the [a]rbitration [p]rovision." (*See Cooper*, ECF No. 80 at 11.)

28. On September 8, 2017, Cooper appealed the Southern District's decision to the U.S. Court of Appeals for the Second Circuit (the "Second Circuit"). The case has been fully briefed, and oral argument took place held on February 5, 2019.

29. In the *Cooper* appeal, Cooper's counsel (who is also counsel for the *Ferguson* plaintiffs) argued that individual Plan participants may not agree to arbitrate their ERISA breach of fiduciary duty claims. (*See Cooper v. Ruane Cunniff & Goldfarb, Inc., et al.*, No. 17-2805 (2d Cir.), ECF No. 94 at 13-16.) If the Second Circuit reverses, the *Cooper* case, a class action putatively representing all 10,000 Plan participants, will be reinstated, adding another judicial proceeding and further complicating an already overcomplicated set of judicial proceedings.

### B. The *DuCharme* Action

30. Approximately ten months after *Cooper* was filed, James DuCharme, another participant in the Plan and one of the Claimants who later filed an arbitration claim, sued the DST Parties, but not RCG, in the U.S. District Court for the Western District of Missouri (the "Western District"), in a putative class action alleging substantially the same ERISA violations as those alleged in *Cooper*. *DuCharme v. DST Systems, Inc.*, No. 17-cv-00022 (W.D. Mo.) ("*DuCharme*").

31. Like Cooper, DuCharme did not opt out of the Arbitration Agreement and was thereby bound by the Arbitration Agreement. As such, on February 22, 2017, the DST Parties filed a motion to compel arbitration or to dismiss the action.

32. On June 23, 2017, Judge Brian C. Wimes of the Western District granted the DST Parties' motion and dismissed the complaint, holding that DuCharme's claims, which

were "asserted as a class action on behalf of the Plan," were "not properly before this Court" and were therefore subject to dismissal. (*DuCharme*, ECF No. 57.) Specifically, Judge Wimes held that, because "the Arbitration Agreement at issue is valid and DuCharme's claims for breach of fiduciary duty fall within the Arbitration Agreement's scope, . . . *DuCharme waived his right to act in a representative capacity on behalf of a class or collective action* under the Arbitration Agreement from which he did not opt out." (*Id.* at 2 (emphasis added).)

33. After the Western District's dismissal of *DuCharme*, counsel for DuCharme (who are also counsel for all the Claimants in the Arbitrations) moved to intervene in *DuCharme* with a new complaint on behalf of Stephanie Ostrander, a participant who had opted out of the Arbitration Agreement. The court subsequently denied that motion.

### C. The *Ferguson* and *Ostrander* Actions

34. On September 1, 2017, three Plan participants who purportedly were never subject to the Arbitration Agreement because they retired before it was promulgated, filed an action in this Court against the DST Parties and RCG, alleging facts and asserting claims virtually identical to those set forth in *Cooper* and *DuCharme* (*Ferguson, et al. v. Ruane Cunniff & Goldfarb, Inc.*, *et al.* Case No. 17-cv-06685 (S.D.N.Y.) ("*Ferguson*")). The *Ferguson* plaintiffs purport to be acting in a representative capacity on behalf of the entire Plan and all 10,000 of its participants, rather than as class members in a class action, and they are seeking recovery for all purported losses suffered by the Plan.

35. Specifically, the *Ferguson* plaintiffs allege, *inter alia*, that:

   a. The *Ferguson* plaintiffs seek "to recover and obtain *all losses* resulting from each breach of fiduciary duty, prohibited transaction and other violation of ERISA, to *restore to the Plan any profits* made through Defendants' use of the Plan's assets and for disgorgement with respect to *all fees and compensation* received

8

by any of the Defendants in connection with any prohibited transaction" (*Ferguson*, ECF No. 9 ¶ 7 (emphasis added)); and

b. RCG and the DST Parties are "liable *to the Plan* to credit back, disgorge and/or make restitution of *all improper compensation* received by them and are liable to the Plan to pay damages or make restitution to the Plan with respect to the *losses suffered by the Plan*" (*id.* ¶ 91 (emphasis added)).

36. Six days after *Ferguson* was filed, Stephanie Ostrander, represented by counsel for Claimants, filed a putative class action complaint in the Western District before Judge Wimes, alleging facts and asserting claims identical to those at issue in *Cooper*, *DuCharme*, and *Ferguson*. *Ostrander v. DST Systems, Inc., et al.*, No. 4:17-cv-00747-BCW (W.D. Mo.) ("*Ostrander*").

37. The DST Parties and RCG moved to dismiss or stay *Ostrander* in favor of *Ferguson* pursuant to the first-filed rule because (i) *Ferguson* and *Ostrander* are parallel actions and (ii) *Ferguson* was the first-filed action. (*Ostrander*, ECF Nos. 23-24, 26-27, 43-44.)

38. On February 2, 2018, after oral argument, Judge Wimes issued an Order dismissing *Ostrander* pursuant to the first-filed rule. (*Ostrander*, ECF No. 73.) The Western District found that *Ostrander* and *Ferguson* were parallel actions because they both allege claims "on behalf of the Plan" and *Ferguson* "alleges claims against the same defendants, arising from the same conduct and circumstances." (*Id.* at 2.) Because the court found that *Ferguson* and *Ostrander* were parallel and that "*Ferguson* is the first-filed case" (*id.* at 5), the court dismissed *Ostrander*.

39. Six months after *Ostrander* was dismissed, on July 23, 2018, Ms. Ostrander (again represented by counsel for Claimants) filed a motion before this Court in *Ferguson*, seeking to intervene and asserting a putative class action to represent the interests of

9

"thousands" of Plan participants who opted out of the Arbitration Agreement (the "*Ostrander* Intervention Motion"). (*Ferguson*, ECF Nos. 53-54.)

40. This Court denied the *Ostrander* Intervention Motion on March 29, 2019 because, *inter alia*, it found that Ostrander's interests are adequately represented by the *Ferguson* plaintiffs. (ECF No. 94 at 8-10.) In so holding, this Court found that "Plaintiffs and Ostrander share an 'identity of interest' and the 'same ultimate objective' to recover losses from the Plan caused by Defendants' alleged breach of fiduciary duties." (*Id.* at 9.) The Court also noted that "Plaintiffs [in *Ferguson*] claim to represent the whole Plan, including Ostrander and all other members of her proposed class." (*Id.*)

41. On November 5, 2018, the *Ferguson* plaintiffs filed a second amended complaint (*Ferguson*, ECF No. 82), which asserts substantially the same claims as those asserted in their previous *Ferguson* complaint (and as those asserted in *Cooper*, *DuCharme*, *Ostrander*—and, as set forth below, in *Canfield* and *Mendon*), and purports to seek recovery on behalf of the entire Plan. (*Id.* ¶¶ 1, 7, 8, 19, 104.)

### D. The *Canfield* and *Mendon* Actions

42. Counsel for Claimants have filed two additional actions in this Court—*Canfield* and *Mendon*—on behalf of seven Plan participants who all purport to bring their claims on behalf of the entire Plan.

43. On September 28, 2018, counsel for Claimants filed a complaint in this Court on behalf of five Plan participants who opted out of the Arbitration Agreement, asserting claims virtually identical to those asserted in *Cooper*, *DuCharme*, *Ferguson*, and *Ostrander*. *Canfield v. SS&C Tech. Holdings, Inc., et al.*, No. 1:18-cv-08913 (S.D.N.Y.) ("*Canfield*"). In their complaint, the five *Canfield* plaintiffs purport to bring their claims "individually and on behalf of the [Plan]" and seek to recover "the losses caused to their accounts, on behalf of the

10

[Plan]." (*Canfield*, ECF No. 1.)

44. On November 5, 2018, counsel for Claimants filed another complaint in this Court on behalf of two Plan participants who opted out of the Arbitration Agreement, once again asserting claims virtually identical to those asserted in *Cooper*, *DuCharme*, *Ferguson*, *Ostrander* and *Canfield*. *Mendon v. SS&C Tech. Holdings, Inc., et al.*, No. 1:18-cv-10252 (S.D.N.Y.) ("*Mendon*"). In their complaint, the two *Mendon* plaintiffs also purport to bring their claims "individually and behalf of the [Plan]" and seek "to recover the losses to their accounts, on behalf of the [Plan]." (*Mendon*, ECF No. 1 ¶¶ 1, 7.)

**The Pending Arbitrations and the Western District Action**

45. In April 2018, eleven claimants sent the DST Parties substantively identical demands, asserting virtually the same claims against the DST Parties and RCG, based upon the same facts, as those asserted in *Cooper*, *Ferguson*, *DuCharme*, *Ostrander*, *Canfield* and *Mendon*. (*See* Ex. A.)

46. The Arbitration Agreement contractually requires that, upon a claimant giving notice of a claim for arbitration and providing such claim to DST, claimant and DST are to jointly submit the claim to the AAA. Based on this provision, on August 6, 2018, DST and the claimants jointly submitted the Demands to the AAA. DST and the claimants have subsequently submitted more than 380 additional arbitration demands to the AAA.

47. Notably, in contravention of the express language of the Arbitration Agreement and Judge Wimes' prior ruling in *DuCharme*, the initial eleven demands brought by counsel for claimants purported to assert claims "both individually, *and on behalf of the Plan*" and sought judgment on behalf of each of the claimants "*and the Class*." (*DuCharme*, ECF No. 18-6.)

48. Moreover, in each of the Demands, as in the *Ferguson* complaint, each claimant sought, *inter alia*: (i) recovery of "[a]ll losses to the Plan resulting from Defendants' violation of ERISA" (Demands ¶ 7); (ii) "on behalf of himself and the Plan . . . all equitable, compensatory and/or remedial relief, including prospective injunctive and declaratory relief, as well as credit, disgorgement and restitution, and attorneys' fees, costs and other recoverable expenses of litigation" (*id.* ¶ 61); and (iii) restoration of "losses to the Plan caused by [Defendants'] breaches of fiduciary duties" (*id.* ¶ 70).

49. Shortly after the first eleven Demands were filed with the AAA, RCG filed an action in the Western District seeking, *inter alia*, to enjoin claimants from (i) prosecuting class, collective, representative or multiple employee claims, and (ii) prosecuting the Arbitrations until this Court determines whether plaintiffs in *Ferguson* represent the entire Plan, including in particular, all participants who are bound by the Arbitration Agreement, including Claimants. *Ruane, Cunniff & Goldfarb Inc. v. DuCharme, et al.*, No. 4:18-cv-00650-BCW (W.D. Mo.) (the "Western District Action").

50. Because the Demands improperly sought class-wide relief in violation of a prior order issued by Judge Wimes, RCG determined that it was necessary to file the Western District Action before that court.

51. Upon the filing of the Western District Action, the Arbitrations were automatically stayed for 60 days pursuant to Rule 1 of the AAA's Employment Arbitration Rules and Mediation Procedures (the "Stay").

52. Claimants moved to dismiss the Western District Action on September 20, 2018, claiming that the inclusion of class or collective claims in the Demands was a mistake and that, "to the extent that [claimants] request relief on a 'class'-wide basis . . . they hereby disavow

12

any such request." (Western District Action, ECF No. 19 at 14.) Based upon that representation and similar representations made by counsel for Claimants at a status conference on October 10, 2018, RCG and the eleven claimants entered into a stipulation on October 18, 2018 whereby claimants promised to amend their demands to remove any class or collective claims by or before October 26, 2016 and RCG agreed to voluntarily dismiss Count I. (Western District Action, ECF No. 35 at ¶¶ 1-2.) Those eleven claimants have now filed such amended Demands with the AAA.

53. With respect to RCG's request in the Western District Action for an injunction staying the arbitrations until this Court has an opportunity to decide whether plaintiffs in *Ferguson* represent the entire Plan, counsel for Claimants repeatedly suggested that RCG's claims should be brought before this Court.

54. Given the statements by counsel for Claimants and the fact that the class arbitration issues were resolved by stipulation, RCG voluntarily dismissed its remaining claims without prejudice.

55. The Stay pursuant to the AAA's rules expired on October 22, 2018, and the AAA held an administrative conference call regarding the Arbitrations shortly thereafter.

56. The Arbitrations were paused in early 2019 in order to allow the parties to discuss a potential mediation of the dispute. That stay terminated on March 27, 2019, when counsel for claimants informed RCG and DST that they planned to proceed with the Arbitrations. Since that time, the parties have selected arbitrators in 314 of the Arbitrations and have recently begun to set hearing dates commencing in June 2020, when Claimant's hearing is scheduled. In addition, extensive document discovery has been served on RCG by Claimant and by other Claimants.

57. In a strong indication that the number of Arbitrations will continue to rise, counsel representing the Claimants and DST have recently filed approximately 80 new arbitrations with the AAA (bringing the current number to approximately 400).

**The *Scalia* Action**

58. On October 8, 2019, Eugene Scalia, the Secretary of Labor, filed a complaint in this Court against RCG, Robert Goldfarb, the DST Parties, and sixteen former members of the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan and/or the Compensation Committee of the Board of Directors of DST Systems, Inc. *Scalia v. Ruane, Cunniff & Goldfarb Inc., et al.*, No. 1:19-cv-9302 (S.D.N.Y.) ("*Scalia*").

59. In *Scalia*, the Secretary alleges that [RCG and DST] "caused the Plan and its participants to suffer harm" and seeks an Order requiring RCG and DST to "restore *to the Plan and its participants* all losses caused." (*Scalia*, ECF No. 1, ¶¶ 59, 63; *id.* at 19 (emphasis added).) Thus, the Secretary seeks the *same* recovery as do the plaintiffs in *Ferguson*, *Canfield*, and *Mendon* and the Claimants in the Arbitrations.

60. *Scalia* presents a number of fundamental questions: whether *both* the Secretary and the *Ferguson* plaintiffs may *simultaneously* prosecute separate actions on behalf of the *same* entity (the Plan) and its participants to remedy the *same* purported harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty. However, even more importantly, may the Secretary, by bringing a suit on behalf of the whole Plan and its participants, cause individual beneficiaries to lose their right to arbitrate their claims even in the face of an Arbitration Agreement and arbitration claims filed by the Claimants before the Secretary filed suit.

61. Accordingly, RCG has determined that it is necessary to file the instant complaint and a motion for preliminary injunction, seeking (i) a declaratory judgement that multiple representatives of the participants and Plan cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty and (ii) enjoining the Arbitrations until this Court can determine whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement.

## COUNT I
### (Declaratory Judgment and Injunctive Relief)

62. RCG repeats and realleges each of the allegations contained in paragraphs 1 through 61 above as if set forth in full herein.

63. Claimant, as a Plan participant, seeks to arbitrate the same claims that the plaintiffs in *Ferguson* and *Scalia* purport to pursue on behalf of the entire Plan, including Claimant. The Arbitration alleges facts, asserts claims, and seeks the same relief as is at issue in *Ferguson* and *Scalia*. As such, the Arbitration and *Ferguson* and *Scalia* are parallel actions.

64. Indeed, counsel for Claimant stated in the *Ostrander* Intervention Motion that intervention in *Ferguson* would allow them "to participate in a matter that is of significant interest to their hundreds of clients who are pursuing similar claims against [the DST Parties and RCG] in arbitration." (*Ferguson*, ECF No. 66 at 11.)

65. *Ferguson* was filed nearly one year before the Arbitration and is therefore the first-filed action. *Scalia*, on the other hand, was filed more than a year after the Arbitration.

66. This Court should issue a declaratory judgment that multiple participants here cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets caused by the *same* alleged breaches of fiduciary duty and that either *Ferguson* or

*Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement.

67. Among other reasons set forth herein, because *Ferguson* was filed before the Arbitration, the Arbitration should be stayed until this Court determines whether plaintiffs in *Ferguson* (or *Scalia*) represent the entire Plan, including in particular, participants like Claimant, who are bound by the Arbitration Agreement.

68. An actual and justiciable controversy exists between RCG and Claimant, and by the terms and provisions of Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

69. This Court has the authority to enjoin the Arbitration under the FAA, 9 U.S.C. § 4, the All Writs Act, 28 U.S.C. § 1651, and/or the Court's general remedial power.

70. RCG will be irreparably harmed if it is forced to defend multiple actions brought by identical or overlapping groups of Plan participants and representatives that allege identical facts, assert the same and overlapping claims, and seek the same and overlapping relief based on purported losses to the same assets.

71. RCG has no plain, speedy, or adequate remedy at law.

72. A previous application was made in the Western District Action for similar relief to that sought herein, but was voluntarily dismissed without prejudice pursuant to the parties' stipulation. No other provisional remedy has been sought in this or any other Court.

73. Accordingly, RCG requests that the Court (i) declare that multiple participants and representatives cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets from the *same* parties caused by the *same* alleged breaches of

fiduciary duty and (ii) enjoin the Arbitration until this Court can determine whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or only the approximately 500 who opted out of the Arbitration Agreement.

## **PRAYER FOR RELIEF**

Wherefore, RCG respectfully request an Order from this Court:

a. Declaring that multiple participants and representatives cannot at the *same* time seek recovery in multiple forums for the *same* harm to the *same* Plan assets from the *same* parties caused by the *same* alleged breaches of fiduciary duty;

b. Enjoining the Arbitration until this Court can determine whether *Ferguson* or *Scalia* represents all 10,000 Plan participants or the approximately 500 who opted out of the Arbitration Agreement;

c. Awarding RCG attorneys' fees and costs; and

d. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 10, 2019

**SCHULTE ROTH & ZABEL LLP**

/s/ Robert J. Ward
Robert J. Ward
Frank W. Olander
Minji Reem
919 Third Avenue
New York, New York 10022
Tel: (212) 756-2000
robert.ward@srz.com
frank.olander@srz.com
minji.reem@srz.com

*Attorneys for Ruane, Cunniff & Goldfarb Inc.*